COMMONWEALTH *vs.* ROGER A. KONEY.

Essex. September 11, 1995. - November 9, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* Instructions to jury, Retroactivity of judicial holding, Failure to make objection, Required finding, Admissions and confessions. *Evidence,* Blood alcohol test, Admissions and confessions, Best and secondary, Hearsay. *Constitutional Law,* Self-incrimination, Admissions and confessions. *Motor Vehicle,* Homicide, Operating under the influence, License to operate. *Identification. Grand Jury.*

At the 1993 trial of a criminal case, defense counsel's objection to the judge's instruction to the jury with reference to lack of evidence of the results of a blood alcohol test was sufficient to preserve the defendant's right to benefit from the retroactive application of the holding of *Commonwealth* v. *Zevitas,* 418 Mass. 677 (1994); in the circumstances, the error in giving the instruction was not harmless and the defendant was entitled to a new trial. [298-301]

At the trial of an indictment for operating a motor vehicle after revocation of license, the judge properly admitted in evidence a photocopy of an identification card, the original of which the defendant had given to the police, for the purpose of establishing that the defendant held himself out as a certain person residing at a certain address. [302-303]

Evidence at the trial of an indictment for operating a motor vehicle after revocation of license was sufficient to warrant a finding by the jury that the defendant knowingly had operated a motor vehicle after his license to do so had been revoked. [303-304]

At a criminal trial, the judge correctly denied the defendant's motion to suppress statements he made to police, where the judge found, after hearing, that the defendant's "spontaneous statements" were "freely made," and that, despite evidence of the defendant's intoxication, the statements were the "product of a rational mind," and those findings were supported by the testimony the judge found credible; further, the

statements may be admitted in evidence at any retrial of the matter. [304-305]

Reference to an accused's three prior convictions of operating a motor vehicle while under the influence of alcohol did not unnecessarily prejudice the defendant, where consideration of those convictions was necessary and relevant to the grand jury's consideration of a bill seeking an indictment alleging the defendant had committed a subsequent offense. [305]

INDICTMENTS found and returned in the Superior Court Department on October 2, 1991.

The case was tried before *Margot Botsford*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Ruth Greenberg* for the defendant.

*S. Jane Haggerty*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. A grand jury returned indictments charging the defendant, Roger A. Koney, with homicide by motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24G (*a*) (1994 ed.); operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (*a*) (1), first par. (1994 ed.), "having been previously convicted . . . of like offense three or more times within six years," G. L. c. 90, § 24 (1) (*a*) (1), fifth par. (1990 ed. & Supp. 1991); operating a motor vehicle after his license to do so had been suspended or revoked, G. L. c. 90, § 23 (1994 ed.); leaving the scene of an accident after causing personal injury and property damage, G. L. c. 90, § 24 (2) (*a*) (1990 ed.); and failing to stop for a police officer, G. L. c. 90, § 25 (1994 ed.). A jury in the Superior Court found the defendant guilty on all indictments except the subsequent offense portion of the charge of operating while under the influence. That charge was tried separately before the judge, who found the defendant guilty.

The defendant, represented by new counsel, appealed to the Appeals Court. We granted the Commonwealth's application for direct appellate review.

We conclude that the defendant is entitled to the benefit of the rule announced in *Commonwealth* v. *Zevitas*, 418 Mass. 677 (1994); that it was error to give the jury instruction in this case which was declared unconstitutional in the *Zevitas* decision; and that the error was not harmless. As a consequence, the defendant's convictions for homicide by motor vehicle and operating a motor vehicle while under the influence of intoxicating liquor must be reversed. We also conclude that the defendant's motion for a required finding of not guilty under Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), on the subsequent offense portion of the operating while under the influence charge should have been allowed. We reject the defendant's contentions that the jury were permitted to consider inadmissible evidence in connection with the charge of operating after revocation, and that his pretrial motion to dismiss the indictments should have been allowed. Finally, we conclude that the judge properly denied the defendant's motion to suppress as involuntary statements made by him to the police. See note 7, *infra*.

The background of the case is as follows. The Commonwealth presented evidence at trial that on September 15, 1991, at about 9 P.M., the defendant was driving down Boston Street in Salem in an automobile belonging to his female companion. The victim and his fiancée had just parked the victim's truck on Boston Street and stepped out of the vehicle. The automobile operated by the defendant struck the victim and the door of the victim's truck. The victim subsequently died from the injuries he received.

The defendant continued driving after the collision, and he did not stop for a police officer who had heard the crash and pursued the defendant's vehicle with the blue lights and siren on the police cruiser activated. After the defendant was stopped, he was belligerent and abusive toward the officer. The police concluded that the defendant was under the influence of alcohol, and he was placed under arrest. It was subsequently determined that the defendant's license to operate had been revoked three times because of prior convictions for

operating while under the influence, and that these revocations were in effect on the date of the accident.

The defendant presented evidence, in the form of testimony from his companion, that he was not intoxicated at the time of the accident. The defendant also presented evidence through a witness who specialized in accident reconstruction that the weather and lighting conditions on the night of the accident would have been detrimental to a driver's ability to perceive a pedestrian in the street and that the victim had begun to cross the street before he was hit by the automobile being operated by the defendant. The evidence in the defendant's case was sufficient to warrant findings by the jury that he had not driven while under the influence of intoxicating liquor and that he was not at fault in the accident.

1. *Jury instruction mandated by G. L. c. 90, § 24 (1) (e).* There was no evidence at the trial that the defendant had the level of his blood alcohol tested. As required by G. L. c. 90, § 24 (1) (e) (1994 ed.), the judge instructed the jury with reference to lack of evidence of the results of a blood alcohol test.[1] At the conclusion of the charge, the defendant's trial counsel made a timely objection to the instruction in the manner set forth below.[2] The instruction was held in *Com-*

---

[1]General Laws c. 90, § 24 (1) (e) reads, in pertinent part, as follows:

"When there is no evidence presented at a civil or criminal proceeding of the percentage by weight, of alcohol in the defendant's blood, the presiding judge at a trial before a jury shall include in his instructions to the jury a statement of an arresting officer's responsibilities upon arrest of a person suspected to be operating a motor vehicle under the influence of alcohol and a statement that a blood alcohol test may only be administered with a person's consent; that a person has a legal right to take or not take such a test; that there may be a number of reasons why a person would or would not take such a test; that there may be a number of reasons why such test was not administered; that there shall be no speculation as to the reason for the absence of the test and no inference can be drawn from the fact that there was no evidence of a blood alcohol test; and that a finding of guilty or not guilty must be based solely on the evidence that was presented in the case."

[2]"I object to the Court instructing on the breathalyzer. A breathalyzer was not at issue. I filed a motion relative to breathalyzer evidence which was allowed without objection. Raising the issue of breathalyzer at this

*monwealth* v. *Zevitas*, 418 Mass. 677, 683 (1994), to violate the self-incrimination provision of art. 12 of the Declaration of Rights of the Massachusetts Constitution. The *Zevitas* decision was released on September 23, 1994. This case was tried in January, 1993. The defendant argues that the *Zevitas* decision should be applied retroactively, and that, under the *Zevitas* ruling, the instruction constituted error which cannot be found to be harmless.

The Commonwealth recognizes that, because this case was on direct appeal when the *Zevitas* case was decided, the defendant would obtain the benefit of the *Zevitas* rule to the extent that he properly preserved the issue by objection at trial. See *Commonwealth* v. *D'Agostino, ante* 281 (1995); *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992), and cases cited. The Commonwealth argues, however, that the objection made by the defendant's trial counsel, see note 2, *supra*, which did not specifically mention art. 12, was insufficient to preserve the issue.

The adequacy of the objection has to be assessed in the context of the trial as a whole. The defendant's trial counsel had filed a pretrial motion in limine which sought to exclude any evidence pertaining to the lack of a conclusive result on the breathalyzer test which had been administered to the defendant after his arrest. Specifically, the motion sought to exclude evidence that the defendant had intentionally manipulated the breathalyzer machine so as to obtain an "insufficient sample" reading. The defendant's trial counsel obviously feared that such evidence would give rise to an inference that the defendant had deliberately manipulated the test because he knew or suspected that he would not pass it. That motion, which the trial judge allowed, specifically referred to G. L. c. 90, § 24 (1) (*e*), the statutory provision which deals with the lack of evidence pertaining to a defendant's blood alcohol level and mandates the instruction

---

point is prejudicial to the defendant and I object to the Court having given that instruction. I don't think any instruction I could construct to the Court could cure that, and I do object to that instruction having been given."

declared unconstitutional in the *Zevitas* decision. See note 1, *supra*. *Opinion of the Justices*, 412 Mass. 1201 (1992), had been submitted to the Legislature on May 12, 1992, well before this case was tried. We can assume that the judge presiding at the trial was familiar with the discussion in *Opinion of the Justices*. That discussion indicated that an instruction having an effect very like the effect of the one required by G. L. c. 90, § 24 (1) (*e*), would violate the self-incrimination provision of art. 12, because it would be tantamount to the admission of a statement by the defendant that "I have had so much to drink that I know or at least suspect that I am unable to pass the test." *Id*. at 1209, quoting *Williford* v. *State*, 653 P.2d 339, 342-343 (Alaska Ct. App. 1982).

As the defendant's trial counsel stated in the objection, discussion of the absence of evidence of the defendant's blood alcohol level in the instruction had the effect of bringing in, through the back door, information which had been specifically excluded by the allowance of the motion in limine. We conclude that the objection was sufficient to preserve the defendant's right to benefit from the rule stated in the *Zevitas* decision.

We also conclude that the error in giving the instruction cannot be found to be harmless. The evidence was in conflict on whether the defendant was operating an automobile while under the influence of intoxicating liquor, and whether a careful driver, at the time and place of the accident, would have seen the victim or been able to avoid him. The evidence also was in conflict over whether the defendant's automobile had swerved into the victim on the side of the street, or whether the victim had stepped out into the street at the time he was hit. The case thus raised issues of credibility and causation which were within the jury's province to resolve. Therefore, as we stated in *Commonwealth* v. *D'Agostino*, *supra* at 287, "It cannot be said with confidence that an instruction calling to the jury's attention the absence of a breathalyzer test, thus giving rise to a possible inference that the defendant knew himself to be intoxicated, could not have

contributed to the jury's rejection of the defendant's evidence." See *Commonwealth* v. *McGrail,* 419 Mass. 774 (1995) (declining to find erroneous admission of refusal evidence harmless, despite substantial evidence of intoxication). As a consequence, the defendant's convictions for homicide by motor vehicle and operating a motor vehicle while under the influence of intoxicating liquor must be reversed.

2. *Fourth offense: sufficiency of the evidence.* At any retrial of the operating while under the influence indictment, the defendant cannot be retried on the subsequent offense portion of the indictment. After the jury returned their verdicts, the defendant waived his right to a jury trial on the subsequent offense charge, and a separate trial was conducted by the judge pursuant to G. L. c. 278, § 11A (1994 ed.).[3] At this trial, the Commonwealth introduced three "packets" of court documents indicating that Roger A. Koney had been convicted on three prior occasions of operating a motor vehicle while under the influence of intoxicating liquor. The prosecutor also sought to introduce a photocopy of the defendant's Massachusetts identification card, but the judge sustained an objection to this evidence.[4] There was no other evidence. The defendant's motion for a required finding of not guilty under Mass. R. Crim. P. 25 (a) was denied by the judge who then found the defendant guilty of the subsequent offense charge.

The defendant's motion for a required finding of not guilty should have been allowed. It was incumbent on the Common-

---

[3]This statute requires a separate trial for a defendant who faces increased punishment for second and subsequent offenses. Under the statute, if a defendant pleads not guilty to the assertion that he is a subsequent offender, "he shall be entitled to a trial by jury on the issue of conviction of a prior offense, subject to all of the provisions of law governing criminal trials. A defendant may waive trial by jury."

[4]A photocopy of the identification card was introduced in evidence at the jury trial in connection with the indictment charging the defendant with operating a motor vehicle after his license to do so had been suspended or revoked. We shall subsequently discuss the defendant's argument that it was error to allow the card in evidence, and conclude that a photocopy of the card was properly admitted.

wealth to prove, as part of its case on the subsequent offense charge, that the defendant, Roger A. Koney, who was in the courtroom was the same Roger A. Koney named in the three prior convictions. See *Commonwealth* v. *Ierardi*, 17 Mass. App. Ct. 297, 302-303 (1983). This the Commonwealth did not do. Mere identity of name is not sufficient to indicate an identity of person. See *Herman* v. *Fine*, 314 Mass. 67, 68-69 (1943), and cases cited. The separate trial requirement of G. L. c. 278, § 11A, precluded the judge from relying on any evidence that had been presented at the jury trial to establish identity. The Commonwealth makes no persuasive argument to save the conviction beyond contending that reversal would exalt form over substance. Identification, however, is a key element in every criminal trial, and the absence of identification has always been a basis requiring acquittal. The defendant is entitled to a judgment in his favor on the subsequent offense charge.

3. *Operating a motor vehicle after revocation.* The Commonwealth introduced in evidence certified copies of documents from the Registry of Motor Vehicles (registry) notifying Roger A. Koney that his right to operate a motor vehicle had been revoked.[5] There was also introduced in evidence, over objection by the defendant's trial counsel on grounds of best evidence and hearsay, a photocopy of a Massachusetts identification card for Roger A. Koney which contained a facial photograph and the same address, date of birth, and identification number that were listed on the revocation notices. The defendant argues that the photocopy of the identification card should have been excluded, and if it had, the Commonwealth's proof on the operating after revocation charge was insufficient to warrant his conviction. We reject the argument.

A police officer testified that he had received the original identification card from the defendant, after which he had

---

[5]The notice was addressed to "Koney, Roger A." at "10 Bogastow Cir, Millis, MA 02054 1039." The notice also contained a date of birth of "7/23/64," and a license number of "029584496."

made a photocopy of the card and returned it to the defendant. The judge acted within her discretion under the best evidence rule in admitting the photocopy in the absence of the original. See *Fauci* v. *Mulready*, 337 Mass. 532, 540-542 (1958); *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 315 (1988). There was evidence accounting for the nonproduction of the original, and no contention that the photocopy was inaccurate or fraudulent. The prosecutor was not required to offer the card under G. L. c. 90, § 30 (1994 ed.), which pertains to the admission of certain registry records.

Admission of the identification card also was proper because the card is not hearsay. Out-of-court statements offered to prove something other than the truth of the statement are not considered hearsay. See, e.g., *Commonwealth* v. *Sullivan*, 410 Mass. 521, 526 (1991). The photocopy was not offered to prove the defendant actually was named Roger A. Koney and actually lived at 10 Bogastow Circle. Rather, as reflected in the Commonwealth's closing argument, the photocopy was offered for the more limited purpose of establishing that the defendant held himself out to be Roger A. Koney who resided at 10 Bogastow Circle. See *Commonwealth* v. *Gonzalez*, 23 Mass. App. Ct. 990, 991 (1987) (finding an envelope addressed to the defendant was admissible to show the defendant had a connection to the address on the envelope, but that attempting to rely on envelope to show the address was the defendant's actual and exclusive residence "invited" hearsay objection).

Although the identification card was not introduced for the truth of the matters on the card, the Commonwealth still introduced sufficient evidence on which the jury could find the defendant guilty of the operating after revocation charge. Since there was testimony that the card had been produced by the defendant, the card constituted reliable evidence from which the jury could find that the defendant held himself out to be Roger A. Koney and was connected with the address to which the notices of revocation had been mailed. Proper mailing of a letter is prima facie evidence of receipt by the

addressee. See *Commonwealth* v. *Crosscup*, 369 Mass. 228, 239 (1975). Thus, based on the identification card, and the documents which were mailed from the registry, there was sufficient evidence to warrant a finding by the jury that the defendant knowingly had operated a motor vehicle after his license to do so had been revoked.[6]

4. *Other issues.* a. *Suppression of the defendant's statements.* Another issue raised by the defendant concerns the judge's denial of the defendant's motion to suppress statements made by him to the police.[7] The defendant asserted that the statements were involuntary because of his emotional and hysterical state after the accident. The judge held an evidentiary hearing on the motion. She found that the statements were "spontaneous statements" by the defendant, that the statements were "freely made" by him, and that, despite evidence of his intoxication the statements were the "product of a rational mind." The judge thus rejected the claim that the statements should be considered involuntary because of the defendant's alleged emotional state, and she also rejected any issue (such as the one now argued on appeal) that the statements were involuntary because the defendant was so intoxicated he could not comprehend what was going on.

The judge's subsidiary findings of fact are supported by the testimony she found credible, and we accept them. *Commonwealth* v. *Williams*, 388 Mass. 846, 851 (1983). The findings in turn support the conclusion that the defendant's emotional state was not such as to prevent him from making rational and voluntary statements. For the most part, the defendant's statements amounted to denials of culpability. He said that he was not drunk; that he had not hit anyone; and

---

[6]Although there was testimony at trial that the defendant denied presently living at 10 Bogastow Circle, this testimony is not inconsistent with the finding that the defendant lived at 10 Bogastow Circle at the time the revocation notice was sent.

[7]The defendant's motion was phrased as one seeking to determine the voluntariness of his statements. The motion was treated, in substance, as a motion to suppress.

that the victim had walked out into the road in front of him. The judge was entitled to infer from these comments that the defendant had sufficient comprehension to make statements that were rational responses to the situation confronting him. Thus, there is support for the judge's determination, put in different terms by her, that "although the defendant may have been somewhat intoxicated when he spoke to the police, his mind was rational and his faculties were under control." *Commonwealth* v. *Simmons*, 417 Mass. 60, 65 (1994). See *Commonwealth* v. *Shipps*, 399 Mass. 820, 826-827 (1987); *Commonwealth* v. *Lanoue*, 392 Mass. 583, 586-587 (1984), *S.C.*, 400 Mass. 1007 (1987), and 409 Mass. 1 (1990). The judge properly concluded that the Commonwealth had satisfied its burden of demonstrating beyond a reasonable doubt that the defendant's statements were voluntary. The statements may be admitted in evidence at any retrial.

b. *Integrity of the grand jury.* Finally, we dispose of the defendant's contention that his motion to dismiss the indictments should have been allowed because the integrity of the grand jury had been violated by the prosecutor's introducing testimony that the defendant's license had been revoked for three prior convictions of operating while under the influence. We recognize that "[r]eference to a defendant's criminal record before a grand jury is clearly undesirable," *Commonwealth* v. *Freeman*, 407 Mass. 279, 282 (1990), however, we conclude that the reference to the defendant's three prior convictions did not unnecessarily prejudice the defendant. There is nothing to indicate that the prosecutor had purposely sought to place improper testimony before the grand jury. Moreover, as a result of the testimony, the prosecutor amended the bill seeking an indictment to allege the subsequent offense provision. The testimony concerning the defendant's prior convictions therefore was necessary and relevant to the grand jury's consideration of the amended bill. The defendant's motion to dismiss the indictments was correctly denied.

5. *Disposition.* The judgments of operating a motor vehicle after his license to do so had been revoked, leaving the scene

of an accident after causing personal injury and property damage, and failing to stop for a police officer are affirmed. The judgments of homicide by motor vehicle and of operating a motor vehicle while under the influence of intoxicating liquor are reversed, and the verdicts are set aside. These cases are to stand for further proceedings in the Superior Court.[8] The judgment of being a subsequent offender with respect to driving while under the influence of intoxicating liquor is reversed, and, on that charge, judgment is to be entered for the defendant.

*So ordered.*

---

[8]The defendant filed a motion with this court on October 16, 1995, seeking a stay of his sentences. The motion has been opposed by the Commonwealth. The defendant received a variety of sentences on the charges on which he was convicted. It may be that the disposition ordered herein makes the motion for stay moot. In any event, if the motion remains relevant, after our disposition, we conclude that it, and any other issues that may pertain to any further proceedings, are best resolved in the Superior Court. Accordingly, we remand the motion for stay to that court for determination.